IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| CHRISTIE SCARBOROUGH,               )<br>            Plaintiff,               )<br>                                    )<br>v.                                  )<br>                                    )<br>MARY DANIEL, et al.,                )<br>            Defendants.             ) | Civil Action No. 5:23-cv-00008<br><br>REPORT & RECOMMENDATION<br><br>By:   Joel C. Hoppe<br>      United States Magistrate Judge |

Plaintiff Christie Scarborough, proceeding pro se, brought this action for civil rights violations under 42 U.S.C. § 1983 and for a Virginia state law retaliation claim. She names as Defendants Mary Daniel, Judge of the General District Court of the Commonwealth of Virginia's 26th Judicial District, in her individual capacity; Nicholas Hager, Magistrate of the General District Court of the Commonwealth of Virginia's 26th Judicial District, in his individual capacity[1]; and Frederick County, Virginia. Compl., ECF No. 1. Pending before the Court are the Defendants' motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. ECF Nos. 4, 8. These motions are before me by referral under 28 U.S.C. § 636(b)(1)(B). All parties have fully briefed the issues, I have heard oral argument, and the motions are ripe for decision. After considering Scarborough's complaint, the parties' briefs and oral arguments, and the applicable law, I find that Scarborough has failed to state a claim that entitles her to relief and therefore recommend that the presiding District Judge grant Defendants' motions to dismiss.

I. Factual Allegations and Claims

---

[1] Scarborough's complaint states that Judge Daniel and Magistrate Hager are sued in their "official" capacities. Compl. ¶ 3(i)–(ii). Because Scarborough only seeks damages against these Defendants, *id.* ¶ 61(a)–(b), (d), the Court assumes she intended to sue them in their individual capacities. *See generally Kentucky v. Graham*, 473 U.S. 159, 164–70 (1985); *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995).

1

When assessing factual allegations for a motion to dismiss, I must view all well-pled facts in the complaint in the light most favorable to the plaintiff. *Philips v. Pitt Ctny. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). As a pro se plaintiff, Scarborough's pleadings are also held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curium).

Scarborough "is an independent media analyst who reports on [the] Frederick County School Board and [the] Frederick County Board of Supervisors[.] . . . She uses social media platforms to publish her news and views." Compl. ¶ 6. The events giving rise to this case stem from Scarborough's social media posts in 2022 publicly criticizing "a facemask lawsuit" brought by Priscilla Bellido against the Frederick County School Board. *Id.* ¶ 7. As a result, Bellido filed a criminal complaint against Scarborough charging harassment in violation of Virginia Code § 18.2-186.4 (class 1 misdemeanor). *Id.* ¶ 8. She subsequently filed a petition for a protective order, which Judge Daniel granted and issued a preliminary protective order, *id.* ¶ 9, ordering Scarborough "to not comment on social media about" Bellido, *id.* ¶ 11.[2]  Frederick County "maintains a policy of not tape-recording or transcribing the testimonies of complaining witnesses," so "nobody knows exactly what . . . Bellido alleged before Judge Daniel." *Id.* ¶ 10.

Related to Judge Daniel's protective order, Scarborough "believe[s] Judge Daniel is well aware of [her] free speech activities, which included criticisms of her husband, Bill Daniel," an employee of Frederick County Public Schools. *Id.* ¶ 56. In 2022, "Scarborough had published videos criticizing Bill Daniel . . . for his oppressive role in denying mask-exemption appeals to students.. . . Scarborough posted a video—featuring herself and Bill Daniel—in which the two had a brief encounter in which Scarborough specifically mentioned Mr. Daniel's wife—Judge

---

[2] Bellido is not a party to this action.

2

Mary Daniel." *Id.* ¶ 57. Judge Daniel ultimately "recused herself from the criminal proceedings based on a 'conflict of interest' because Scarborough's criminal charges originated from her criticisms of Bellido's facemasking lawsuit against Frederick County Public Schools." *Id.* ¶ 59.

Later, Bellido filed a second criminal complaint alleging that Scarborough violated the protective order, *id.* ¶ 14, by "(supposedly) making a harassing post on Facebook. However, this (supposedly) harassing post about Bellido was made by another Facebook user," one 'Nicola Dowd'—who is obviously not Scarborough," *id.* ¶ 15 (emphasis omitted). On this second complaint, Magistrate Hager issued an arrest warrant for Scarborough. *Id.* ¶ 16. As before, "nobody knows exactly what Bellido told [Magistrate Hager] because the County maintains a policy of not tape-recording or transcribing the testimon[y] of complaining witnesses." *Id.* (emphasis omitted); *see also id.* ¶ 16. The next day, Scarborough was arrested by the County Sherriff's Department and transported to the Adult Detention Center. *Id.* ¶ 18. Later that same day, she was released. *Id.* The Commonwealth then received evidence that Nicola Dowd did in fact make the post, not Scarborough, and dismissed Bellido's second criminal complaint. *Id.* ¶ 19. Judge Ian Williams ultimately dismissed both the original criminal charge for harassment and the protective order. *Id.* ¶¶ 22–23.

*

Scarborough asserts four counts against in her Complaint. Count I is a damages claim pursuant to 42 U.S.C. § 1983 for violation of Scarborough's right to free speech under the First Amendment against Judge Daniel. *Id.* ¶¶ 24–33, 61(a). Count II also asserts a damages claim pursuant to § 1983 against Magistrate Hager for issuing an arrest warrant without probable cause, in violation of the Fourth Amendment. *Id.* ¶¶ 34–42, 61(b). Count III asserts a § 1983 claim for damages and injunctive relief against Frederick County, where Scarborough argues that

Frederick County's policy of not recording the testimony of complaining witnesses violated her right to a fair trial under the Fourteenth Amendment. *Id.* ¶¶ 43–54, 61(c). Finally, Count IV asserts a retaliation claim for damages against Judge Daniel, stating that she retaliated against Scarborough for engaging in free speech activities against Judge Daniel's husband. *Id.* ¶¶ 55–60, 61(d).

## II. Motions to Dismiss

Judge Daniel and Magistrate Hager move to dismiss all counts asserted against them under a defense of absolute judicial immunity, pursuant to Rule 12(b)(6).[3] *See generally* Judicial Defs.' Br. in Supp. Mot. to Dismiss 1, 4, 6–8, 13 ("Judicial Defs.' Br."), ECF No. 9. They also move to dismiss all claims against them for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), specifically asking the Court to dismiss those claims "with prejudice."[4] *See generally id.* at 1, 5, 11–13. Frederick County moves to dismiss the claim against it for lack of subject matter jurisdiction under a defense of sovereign immunity, pursuant to 12(b)(6), and for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).[5] *See generally* Def. Frederick Cnty.' Br. in Supp. Mot. to Dismiss ("Cnty. Def.'s Br."), ECF No. 5.

---

[3] Judge Daniels and Magistrate Hager expressly raise judicial immunity under Rule 12(b)(1). Judicial Defs.' Br. 4 n.1. While some courts do consider judicial immunity under Rule 12(b)(1), *see, e.g.*, *Chien v. Motz*, No. 3:18-cv-106, 2019 WL 346761, at *6 (E.D. Va. Jan. 7, 2019), others have held that dismissal with prejudice on those grounds is appropriate under Rule 12(b)(6), *see, e.g.*, *Rodriguez v. Doe*, 549 F. App'x 141, 143, 145 (4th Cir. 2013); *Knight v. Waters*, 991 F.2d 790, at *1 (4th Cir. 1993).

[4] Judge Daniel and Magistrate Hager identify other grounds for dismissal: first, that the "Eleventh Amendment bars [Scarborough's] suit against the Judicial Defendants" because she purports to seek damages against them in their "official" capacities, Judicial Defs.' Br. 8; and second, that the *"Rooker-Feldman* doctrine precludes federal courts from exercising appellate review over state court orders, *id.* at 9. Because I recommend dismissal on other grounds, I do not address these additional arguments.

[5] Frederick County also identifies other grounds for dismissal: first, that it is "not responsible for the operation of its judicial system and has no role in respect to the conduct of proceedings or recording of testimony before its judges and magistrates," Frederick Co. Br. 10; second, that Scarborough's "request

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In making this determination, the Court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. *Philips*, 572 F.3d at 180. The Court need not accept legal conclusions, formulaic recitation of the elements of a cause of action, or "bare assertions devoid of further factual enhancements," however, as those are not well-pled facts for Rule 12(b)(6)'s purposes. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and a court should dismiss a complaint that is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Federal courts have an obligation to construe pro se pleadings liberally, so that any potentially valid claim can be fairly decided on its merits rather than the pro se litigant's legal acumen. *Rankin v. Appalachian Power Co.*, No. 6:14cv47, 2015 WL 412850, at *1 (W.D. Va. Jan. 30, 2015) (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982)).

A.    Scarborough's Claims Against the Judicial Defendants

To allow judges and judicial officers to act freely upon their convictions, the common law has long recognized their absolute immunity from suits for damages. *Mireles v. Waco*, 502

---

for monetary damages is barred by the Eleventh Amendment, *id.* at 12; and finally, that her "request for an injunction is barred by the Anti-Injunction Act and principles of equity, comity, and federalism," *id.* Because this Court recommends dismissal on other grounds, I do not address all the alternative arguments that Frederick County asserts in its brief.

5

U.S. 9, 9–10 (1991) (per curiam); *Pressly v. Gregory*, 831 F.2d 514, 517 (4th Cir. 1987) ("As judicial officers, [Virginia] magistrates are entitled to absolute immunity for acts performed in their judicial capacity."). Judicial immunity, though broad, does not cover all acts taken by a judicial officer. Instead, two conditions must be met. First, the judicial officer cannot have acted "in the 'clear absence of all jurisdiction.'" *King v. Myers*, 973 F.2d 354, 356 (4th Cir. 1992) (quoting *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)). This requirement concerns the judge's subject matter jurisdiction over the matter before him or her. *Id.* at 357 (citing *Stump*, 435 U.S. at 356). The scope of jurisdiction is construed broadly, and immunity will be unavailable only if jurisdiction was clearly absent, not merely if the judge acted in excess of his or her jurisdiction. *Id.* at 356–57. Second, the challenged action must have been a "judicial act." *Id.* at 357. To be a judicial act, the action in question must be of a type normally performed by a judge, and it must have been performed while the parties dealt with the judge in his or her judicial capacity. *Id.* An act is still judicial, and immunity still applies, even if the judge commits "grave procedural errors." *Id.* (quoting *Stump*, 435 U.S. at 359).

Here, the actions taken by both Judge Daniel and Magistrate Hager fell well within the protections of judicial immunity. First, regarding Count I against Judge Daniel, Virginia judges have authority to issue preliminary protective orders on a sworn petition made in an ex parte proceeding. *See* Va. Code § 19.2-152.9(A). Scarborough contends nonetheless that judicial immunity should not apply here because Judge Daniel's overly broad protective order violated her right to free speech under the First Amendment, thereby acting in the "clear absence of all jurisdiction." Pl.'s Resp. to Judicial Defs.' Mot. to Dismiss 2 ("Pl.'s Resp."), ECF No. 13. This characterization of Judge Daniel's jurisdiction is too narrow. Scarborough offers no support for her contention that Judge Daniel had no jurisdiction to issue the preliminary protective order

6

simply because she alleges that the protective order was unconstitutional, and therefore outside of Judge Daniel's jurisdiction. Her argument is at odds with the principle that jurisdiction should be construed broadly when evaluating judicial immunity. *Cf. Stump*, 435 U.S. at 358 (judge who "faile[d] to comply with elementary principles of procedural due process" in issuing sterilization order was entitled to judicial immunity where state law authorized the order). Likewise, Scarborough's argument that Judge Daniel's issuance of a protective order with a "prior restraint" was not a "judicial act" is unpersuasive. Judge Daniel issued the preliminary protective order in her capacity as a judge, and the entering of a protective order is clearly a judicial act that falls within a judge's jurisdiction in Virginia. Va. Code § 19.2-152.9(A); *cf. Darling v. Falls*, 236 F. Supp. 3d 914, 928 (M.D.N.C. 2017) (finding that in North Carolina state court, entering ex parte orders and domestic violence protective orders are judicial acts). For these reasons, I find that Judge Daniel is protected by absolute judicial immunity and recommend that Count I be dismissed with prejudice.

     Magistrate Hager is protected by judicial immunity for similar reasons. Scarborough argues that judicial immunity should not apply because Magistrate Hager acted outside of the scope of his jurisdiction by allegedly issuing an arrest warrant without probable cause, which violates the Fourth Amendment's warrants clause. Pl.'s Resp. 2. Again, Scarborough's characterization of Magistrate Hager's jurisdiction is too narrow. Magistrates in Virginia have statutory authority to issue warrants under the factual circumstances described in Scarborough's complaint, *see* Compl. ¶ 8 (citing Va. Code § 18.2-186.4). Va. Code § 19.2-71(A) (authorizing magistrates to issue arrest warrant for misdemeanor offenses). Additionally, Magistrate Hager engaged in a judicial act, as "[i]ssuing process of arrest for one accused of a crime is a judicial function." *King*, 973 F.2d at 358. Even if Magistrate Hager exceeded his authority by issuing a

7

warrant without probable cause (as alleged by Scarborough), "that does not make [his] act[] any less 'judicial.'" *Id.* For these reasons, I find that Magistrate Hager is also protected by absolute judicial immunity and recommend that Count II be dismissed with prejudice.

Finally, Scarborough raised a state law retaliation claim against Judge Daniel, asserting that the Judge "retaliated against her for exercising her free speech activities against an employee of Frederick County Public Schools—namely, Judge Daniel's husband." Compl. ¶ 56. Scarborough "had published videos criticizing Bill Daniel . . . for his oppressive role in denying mask-exemption appeals to students." *Id.* ¶ 57. Scarborough also posted a video with Bill Daniel where she "specifically mentioned Mr. Daniel's wife." *Id.* Therefore, she believes that Judge Daniel "exceeded the scope of her authority, by issuing a court order to bridle [her] protected free speech activities—as a 'retaliatory' measure for her criticisms against her husband." *Id.* ¶ 58.

As argued by Judge Daniel, Virginia law does not recognize a free-standing claim for "retaliation." Br. 13 Scarborough does not contend otherwise. Even construing the claim liberally as a First Amendment retaliation claim, the Court must find that Scarborough's claim fails. A first amendment retaliation claim has three elements: first, the plaintiff engaged in a constitutionally protected first amendment activity such as speech; second, the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the protected activity; and third, there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. *Suarez Corp. Indus. v. McGaw*, 202 F.3d 676, 686 (4th Cir. 2000). Scarborough's allegations fail to show any causal link between her speech and Judge Daniel's issuance of the protective order.

Additionally, even if Scarborough stated a claim upon which relief could be granted, Judge Daniel would still have judicial immunity from damages. Judge Daniel's issuance of a protective order is a judicial act within her jurisdiction. Therefore, for these reasons, I recommend that Count IV against Judge Daniel also be dismissed with prejudice.

B.   *Scarborough's Claim Against Frederick County*

Scarborough also claims that Frederick County violated her constitutional right to a fair trial under the Fourteenth Amendment by failing to record or transcribe testimony before a judge or magistrate. Frederick County argues that it is immune form suit under sovereign immunity, Frederick Cnty. Br. 6, and that Scarborough failed to state a claim on this count, *id.* at 6.

Scarborough asserts that Frederick County has a policy of not recording judicial proceedings of the sort at issue in this case. She contends that this policy violates her constitutional right to a fair trial. "[A]ny person within the jurisdiction of the United States may invoke [§ 1983] against any other person who, acting 'under color of' state law, has deprived them of 'any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Health & Hosp. Corp. v. Talevski*, 143 S. Ct. 1444, 1452 (2023). A municipality may be liable under § 1983 for the violation of a plaintiff's constitutional rights, but "only where the constitutionally offensive actions of employees are taken in furtherance of some municipal 'policy or custom.'" *Bd. of Cnty. Comm'r's of Bryan Cnty., Okla.. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984). "A plaintiff who asserts a § 1983 claim against a municipality for acts done by a municipal officer or employee is obliged to identify a municipal policy, or custom that caused the plaintiff's injury." *Kendrick v. Albemarle Cnty.*, No.

9

7:21cv141, 2022 WL 258483, at *3 (W.D. Va. Jan. 27, 2022) (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 403).

While the Eleventh Amendment provides states immunity from suits for damages brought in federal court, *Bland v. Roberts*, 730 F.3d 368, 389 (4th Cir. 2013), this immunity does not extend to municipalities or their officials, *Monell*, 436 U.S. at 690 n.4, and instead protects only those officials and entities that are considered to be 'arms of the State,'" *Bland*, 730 F.3d at 389–90 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). While Frederick County argues that it should be treated as an arm of the state, federal law does not support this claim. *See, e.g.*, *Mt. Healthy*, 429 U.S. at 281; *Kendrick*, 2022 WL 258483, at *3; *Helton*, 2021 WL 2550281, at *2 ("It is well settled that a municipality like Henry County [, Virginia] is a "person" to whom § 1983 applies"). In support of its argument that it should be treated as an arm of the state, Frederick County cites two unpublished Virginia circuit court cases dealing with similar issues related to county sovereign immunity and § 1983. *See* Frederick Cnty. Br. 5–6. It also cites a Virginia Supreme Court case to support the notion that "counties in Virginia are considered political subdivisions of the State and thus enjoy the same sovereign immunity as the Commonwealth." *Id.* at 4 (citing *Mann v. Cnty. Bd. of Arlington Cnty.*, 199 Va. 169, 174–75 (1957)). Nevertheless, Frederick County acknowledges, "Virginia law is not conclusive on whether counties are to be treated like municipalities for the sake of § 1983 suits." *Id.* at 5.

Frederick County then discusses the two unpublished Virginia circuit court cases. In one case, the court "distinguished *Monell*, saying that its holding was 'expressly limited to providing that *municipal governments and officers* are "persons" under § 1983.'" Frederick Co. Br. 6 (quoting *Jackson v. Va. Dep't of Soc. Servs.*, No. G-9512-1, N-2608-3, N-2459-1, 1987 WL

10

488788, at *4 (Va. Cir. 1987)). The court held that the director of a state agency sued in his official capacity was immune from suit because "a judgment against state officers would be in essence be a judgment against the State and the state is not a 'person' within the meaning of [§ 1983]." *Id.* (quoting *Jackson*, 1987 WL 488788, at *4). In the other case, the court found that "the plaintiff had pleaded a theory of recovery that was prohibited by *Monell* anyway, for either a State or a municipality," and did not address the issue of whether a county was immune from a § 1983 suit. *See id.* at 5–6 (citing *Schoeneman v. Fairfax Cnty.*, No. 129085, 1995 WL 17049795, at *2 (Va. Cir. 1995)). Frederick County does not explain how either of these cases support a conclusion that a Virginia county—as opposed to the head of a state agency, as in *Jackson*—is considered an arm of the state and is therefore immune from suit. Moreover, the fact that the *Schoeneman* Court entered judgment for Fairfax County on the merits of plaintiff's § 1983 claim alleging the county failed to train its police officers suggests the county was not immune from suit. 1995 WL 17049795, at *2 (citing *Canton v. Harris*, 489 U.S. 378 (1989)). Additionally, courts in this District have found against Frederick County's argument. For example, in *Kendrick*, the court held that "[u]nder § 1983, counties and cities are considered to be municipalities, and Albemarle County is considered to be a municipality." 2022 WL 258483, at *3. Therefore, as a municipality, Frederick County does not have sovereign immunity from a suit under *Monell*.

  Nevertheless, Scarborough fails to state a claim upon which relief may be granted against Frederick County. Scarborough argues that the policy of not recording the testimony of complaining witnesses violates her right to a fair trial under the Fourteenth Amendment. Compl. ¶ 43. The Sixth Amendment (as applied to the states through the Fourteenth Amendment) lays out the protections fundamental to a "fair" criminal prosecution, including "the right to a speedy

11

and public trial, by an impartial jury of the State and district wherein the crime shall have been committed," the right "to be informed of the nature and cause of the accusation," the right "to be confronted with the witnesses against [her]," the right "to have compulsory process for obtaining witnesses in [her] favor," and the right to the assistance of counsel for her defense. U.S. CONST. amend. VI; *see generally In re State-Record Co., Inc.*, 917 F.2d 124, 126–28 (4th Cir. 1990) (per curiam) (noting that a criminal defendant's "right to a fair trial" derives from the Sixth Amendment). While Scarborough alleges that she has a right to a recording of ex parte testimony at the charging stage, *see generally* Compl. ¶¶ 43–54, this is not expressly recognized in the Sixth Amendment, nor does she cite to any case law in support this "right," *see* Pl.'s Resp. to Frederick Cnty.'s Mot. to Dismiss 3, ECF No. 12. The most analogous rights to Scarborough's asserted right are the rights to exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), and to confront "witnesses" who "testify" against the criminal defendant, *see Crawford v. Washington*, 541 U.S. 36 (2004). While both rights allow a defendant access to pretrial or out-of-court statements under certain circumstances, they can only be "violated" in the setting of a criminal "trial." *See, e.g.*, *United States v. Le*, 306 F. Supp. 2d 589, 592 (E.D. Va. 2004) ("[T]he disclosure obligation created by *Brady* is triggered by, and attaches to, a defendant's right to a fair trial, not to a defendant's opportunity to participate in the internal DOJ administrative process concerning whether to seek capital punishment in a particular case."); *United States v. Hartz*, 852 F. Supp. 511, 514 (S.D. W. Va. 1994) (holding that the "Sixth Amendment right of confrontation ha[d] not attached" before trial). Here, Scarborough alleges that the Commonwealth dismissed Bellido's criminal complaint that Scarborough had allegedly violated the protective order and that Judge Williams later vacated the protective order; therefore, no "trial" occurred, and Scarborough's right to trial did not attach. Compl. ¶¶ 19, 23. Scarborough

does not explain how her right to trial could have been violated when each of the cases against her was dismissed well before trial. *Monell* claims, and § 1983 claims generally, require the plaintiff to show that the government infringed on a constitutional right, and Scarborough has not articulated facts to identify a protected constitutional right in her complaint. Additionally, Scarborough has not alleged any well-pled facts to show that Frederick County has any role in setting the no-recording policy at the court, and therefore has not met her burden of identifying a "municipal policy or custom" that caused her injury. *Kendrick*, 2022 WL 258483, at *3 (citing *Bd. of Cnty. Comm'rs*, 520 U.S. at 403). For the aforementioned reasons, I recommend that Scarborough's claim against Frederick County be dismissed with prejudice.

### III. Conclusion

The claims in Scarborough's Complaint, ECF No. 1, fail to state causes of action for which the Court can grant relief, and they should be dismissed under Rule 12(b)(6). I recommend that the presiding District Judge **DISMISS WITH PREJUDICE** all counts against The Honorable Mary Daniel and The Honorable Nicholas Hager, as both Defendants are protected by absolute immunity. I also recommend that the District Judge **DISMISS WITH PREJUDICE** the claim against Frederick County, because of Scarborough's failure to state a claim.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record.

ENTER: August 11, 2023

Joel C. Hoppe
United States Magistrate Judge